101 F.3d 704
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James A. THORNTON, Defendant-Appellant.
 No. 96-1793.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 1, 1996.[1]
Decided Nov. 14, 1996.
 
 Before CUMMINGS, COFFEY and EVANS, Circuit Judges.
 
 ORDER
 
 1
 A jury found James Thornton guilty of possessing a firearm when he was a felon. The primary issue during the trial was whether Thornton actually possessed the firearm as his status as a felon was conceded. After he was convicted Thornton filed a motion for a new trial, which was denied. The basis for the motion was that Thornton's trial attorney failed to call Richard Grundy as a witness on Thornton's behalf. Grundy's testimony, it is claimed, would have created a reasonable doubt as to whether Thornton possessed the firearm.
 
 
 2
 Indianapolis police officer Thomas McGraw was the primary witness against Thornton. He testified that he received a radio dispatch directing him to the intersection of West 26th Street and North Capitol Avenue in Indianapolis where a man dressed in black was waiving a gun. As McGraw approached the intersection in his marked squad car he spotted Thornton wearing--you guessed it--all black. McGraw, who was in uniform, pulled his squad next to Thornton, stepped out, and told Thornton to stop. Thornton had other ideas; he ran west on 26th Street.
 
 
 3
 As Thornton ran, McGraw pursued him in his patrol car. As the chase ensued, McGraw saw Thornton pull a handgun from his waistband. Thornton slowed down, ran across 26th Street, and threw the gun over the top of a building. Thornton then reversed direction and ran east on 26th Street. McGraw put his squad in reverse and chased Thornton by driving backwards; he testified that he never lost sight of Thornton while the chase unfolded. After crossing the intersection of Capitol and 26th, the officer got out of his car as Thornton approached the Weyerbacher Apartments. At this point, McGraw lost sight of Thornton for about 10 seconds as Thornton went behind a building. After regaining sight of Thornton, McGraw was able to catch, tackle, and place him under arrest. As McGraw was handcuffing Thornton, another gendarme, Russell Burns, arrived on the scene. McGraw told Burns to look for a handgun in the vicinity where Thornton had thrown the weapon. Burns testified that he found the gun in a grassy area behind the building over which McGraw had told him that Thornton had thrown the gun. The gun was the same size and color as the one McGraw saw Thornton pull from his waistband.
 
 
 4
 Following his conviction, Thornton, with a new attorney at his side, filed a motion for a new trial claiming ineffective assistance of trial counsel. In an affidavit which Thornton filed in support of the motion, Linda Wagoner, his trial attorney, said Thornton told her she should interview Grundy. At the time, Grundy was in federal prison on drug trafficking charges. Wagoner testified that the United States Marshal's Service advised her that Grundy's attendance could not be secured for the trial as it was then scheduled. Wagoner, rather than seek a continuance, elected to proceed to trial without Grundy as a witness. Wagoner stated she never interviewed Grundy to find out what his testimony would be. At trial, Wagoner did not put on any witnesses.
 
 
 5
 At the hearing on the new trial motion, Grundy testified about what he had seen. He said that at the time of the incident he was standing on the corner of 26th and Capitol with four or five other men. As he was standing there, Thornton approached the group from across the street. Several minutes later Officer McGraw arrived, and the men scattered. Grundy testified that he headed north on Capitol and Thornton hightailed it east, thereby contradicting McGraw's testimony that Thornton initially ran west. Grundy stated that McGraw first headed west on 26th street, then stopped and went into the parking lot of the apartment building. Grundy said there was a man on the corner with a gun, it wasn't Thornton, and he didn't know who the man was. He also stated that Thornton did not have a gun at the time in question. On cross-examination, Grundy admitted that Thornton was the only person on the corner dressed in black. Grundy also said that he lost track of Thornton while Thornton was running from the scene.
 
 
 6
 In order to prevail on a claim of ineffective assistance of trial counsel, a defendant must establish both that his attorney's performance was deficient and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 688; United States v. Hubbard, 22 F.3d 1410, 1422 (7th Cir.1994), cert. denied, 115 S.Ct. 762 (1995). A defendant's failure to make either showing will defeat his claim. Therefore, if it is clear that Thornton was not prejudiced by the allegedly deficient performance of his counsel, we can dispose of his claim without determining whether the performance was constitutionally infirm. Strickland, 466 U.S. at 668; see Hubbard, 22 F.3d at 1422 (rejecting a claim of ineffectiveness on the ground that the defendant suffered no prejudice even though the record on appeal was insufficient to determine whether counsel's performance met the constitutional standard).
 
 
 7
 We agree with the district court that Thornton was not prejudiced by his attorney's failure to call Grundy as a witness. In order to satisfy the prejudice prong of an ineffective assistance of counsel claim, a defendant must show that "counsel's errors were so serious ... [that he was deprived] of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. In order to satisfy this requirement, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.... [rather] he must show that there is a reasonable probability but for the counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 693-94. In our case, this means Thornton must show there is a reasonable probability that had Grundy testified, the jury would have had a reasonable doubt about Thornton's guilt.
 
 
 8
 The only issue at trial that matters for the evaluation of Thornton's ineffectiveness claim is whether Thornton had a gun. McGraw's testimony was internally consistent, and Thornton does not seriously claim that anything elicited on cross-examination undermined McGraw's description of the events. McGraw was unwavering in his claim that Thornton's clothes matched the description given in the radio dispatch, that Thornton ran when McGraw told him to stop, that Thornton was in his sights for all but a few seconds during the ensuing chase, and that he saw Thornton throw the gun over a building, where one was soon found. Thus, for the jury to form a reasonable doubt about whether Thornton possessed a gun, Grundy's testimony would have to lead it to believe that McGraw was either lying or mistaken about what happened.
 
 
 9
 Thornton claims Grundy's testimony could serve to create a reasonable doubt about Thornton's guilt because Grundy says Thornton did not initially run west on 26th street and then reverse direction and run to the spot east of his starting point, where he was ultimately arrested. Rather, Grundy claims that Thornton simply ran east when Officer McGraw came upon the scene. If the events occurred as Grundy describes them, Thornton would not have run by the area where the gun was ultimately found. This, claims Thornton, was sufficient to create a reasonable doubt. We disagree.
 
 
 10
 Grundy's testimony is wholly unconvincing. Grundy testified that he ran north (recall the group of men scattered) when Officer McGraw arrived. Therefore, his back would have been to the events he was describing. In that Grundy himself was seeking to avoid capture, we find it difficult to believe that he could or would have kept an eye on events occurring behind him. He also testified that Thornton did not have a gun but that another man at the intersection did. The problem with this assertion is that McGraw testified that Thornton pulled the gun from his waistband after he began to run. It therefore would have been hidden at the time Grundy claims to have been standing with Thornton and others at the corner. Moreover, Grundy could not identify, either by name or description, the man he claimed possessed the gun, thus making his vague assertion implausible.
 
 
 11
 Beyond the internal weakness in the story Grundy tells, the potential that his testimony would convince the jury that McGraw should not be believed is weakened by the fact that he had been convicted in state court in 1986 of heroin possession and, at the time of Thornton's trial, was serving a federal sentence for cocaine trafficking. See Federal Rule of Evidence 609(a)(1) ("For the purpose of attacking the credibility of a witness ... evidence that a witness ... has been convicted of a crime shall be admitted ... if the crime was punishable by death or imprisonment in excess of one year....). Moreover, if Grundy had been called as a witness, his testimony that he himself fled when McGraw approached would have suggested to the jury that he had something to hide from the police and, therefore, a motive to try to undermine the officer's testimony.
 
 
 12
 In sum, the inherent weakness in Grundy's testimony and the admissible evidence of his criminal record for impeachment indicate that even if he had been called as a witness there is no reasonable probability that the jury would have voted to acquit. As such, Thornton has not shown prejudice from his attorney's failure to put Grundy on the witness stand. This means he cannot prevail on his claim that he did not receive effective assistance of counsel.
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 This case was set for oral argument on October 1, 1996. On September 30, 1996, however, we granted a joint motion to waive oral argument and the case was submitted on the briefs